IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,

v.

JAIME JAVIER GUTIERREZ-
MOSQUEDA ,

Defendant.

CRIMINAL ACTION NO.
1:10-CR-00490-TCB-LTW

## MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING CASE READY FOR TRIAL

This matter is presently before the Court on the following motions filed by Defendant Jaime Javier Gutierrez-Mosqueda ("Gutierrez-Mosqueda"): (1) two preliminary Motions to Suppress Statements, and a perfected Motion to Suppress Statements, (Docket Entries [178, 234, 309]); and (2) a Motion and Supplemental Motion for Production of Name and Location of Confidential Informants, (Docket Entries [236, 265]). For the reasons set forth below, the undersigned **RECOMMENDS** that Defendant Gutierrez-Mosqueda's Motions to Suppress Statements be **DENIED**, (Docket Entries [178, 234, 309]), and Defendant Gutierrez-Mosqueda's Motions for Production of Name and Location of Confidential Informants be **DENIED**, (Docket Entries [236, 265]).

## MOTIONS FOR PRODUCTION OF NAME AND LOCATION OF CONFIDENTIAL INFORMANTS

This case arises from a Title III[1] wiretap investigation into the "El Guero" drug-trafficking and money-laundering organization that has allegedly smuggled cocaine and crystal methamphetamine from the Republic of Mexico into Atlanta, Georgia and elsewhere. Gutierrez-Mosqueda was arrested and charged for his participation in the "El Guero" organization.

In addition to intercepted wire communications, the Government employed the use of a primary confidential informant ("CI-1"). Gutierrez-Mosqueda moves for the production of the name, address, and other identifying information for CI-1 as well as access to CI-1. Gutierrez-Mosqueda contends that disclosure of CI-1's identity and location is necessary because according to ICE Report No. 000003, CI-1 alleged that on January 7, 2010, "Picho"[2] called CI-1 and told CI-1 that he (Picho) had picked up one pound of methamphetamine from Gutierrez-Mosqueda. When Picho was arrested on November 16, 2010, however, he told agents that Gutierrez-Mosqueda only sold cocaine to him, not methamphetamine. When Gutierrez-Mosqueda was arrested, he admitted to engaging in cocaine transactions, but not methamphetamine transactions. According to Gutierrez-Mosqueda, the addition of methamphetamine in the charges against him will enhance any sentence he may receive and will significantly affect his decision on

---

[1] Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-2522.

[2] "Picho" is the alias for co-defendant Jose Luis Chavez-Maciel.

2

whether or not to proceed to trial.

The Government responds that CI-1 is not the only source of information that Gutierrez-Mosqueda was involved in methamphetamine distribution. Instead, for example, between April 14 and 16, 2010, law enforcement agents intercepted Gutierrez-Mosqueda on the court-authorized wiretap as he participated with his co-defendants in a delivery of three pounds of methamphetamine.

Gutierrez-Mosqueda does not address the Government's response.

In Roviaro v. United States, 353 U.S. 53 (1957), the Supreme Court recognized that the government has a limited privilege to withhold the identity of its informants from disclosure. Id, 353 U.S. at 59-60. As the Roviaro court explained:

> The purpose of the privilege is the furtherance and protection of the public interest in effective law enforcement. The privilege recognizes the obligation of citizens to communicate their knowledge of the commission of crimes to law-enforcement officials and, by preserving their anonymity, encourages them to perform that obligation.

Id. at 59. However, if the disclosure of the informant's identity is "relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause, the privilege must give way." Id. at 60-61. To determine when the privilege must give way, the Roviaro court established a balancing test between "the public interest in protecting the flow of information against the individual's right to prepare his trial," whereby a court must examine "the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." Id. at 62. The Eleventh Circuit has focused on

3

three factors in particular: "(1) the extent of the informant's participation in the criminal activity, (2) the directness of the relationship between the defendant's asserted defense and the probable testimony of the informant, and (3) the government's interest in non-disclosure." United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985) (internal citations omitted).

1. <u>Extent of the Informant's Participation in the Alleged Criminal Activity</u>

Although CI-1 participated in the activities of the "El Guero" organization, this first factor does not weigh in favor of disclosure. In general, the greater the informant's level of participation in the criminal activity, the greater the need to disclose the informant's identity. United States v. Ayala, 643 F.2d 244, 246 (5th Cir. 1981). The Government concedes that CI-1 does not qualify as being merely a tipster, such that the question of disclosure is easily resolved in favor of non-disclosure. See United States v. Diaz, 655 F.2d 580, 587 (5th Cir. 1981) (recognizing that the Roviaro principle does not require disclosure of a mere tipster's identity). On the other hand, CI-1 was not the sole participant, other than Gutierrez-Mosqueda, in the crimes charged. With respect to the methamphetamine charge that is of particular interest to Gutierrez-Mosqueda, in addition to the information from CI-1 that Picho told CI-1 that he ("Picho") had picked up one pound of methamphetamine from Gutierrez-Mosqueda, law enforcement agents intercepted communications from Gutierrez-Mosqueda between April 14 and 16, 2010, indicating his involvement in the delivery of three pounds of methamphetamine. Thus, law enforcement agents would be able to testify from personal knowledge about

4

Gutierrez-Mosqueda's involvement in the distribution of methamphetamine. Moreover, much of CI-1's conduct in the investigation occurred in the presence of law enforcement agents, who were able to identify and continue to investigate Gutierrez-Mosqueda through independent means, such as public databases, traditional surveillance, and wiretap surveillance. As such, the Court finds that the first factor does not favor disclosure.

2. The Directness of the Relationship Between Gutierrez-Mosqueda's Asserted Defenses and the Probable Testimony of CI-1

Next, this Court turns to the correlation between Gutierrez-Mosqueda's asserted defenses and CI-1's probable testimony. The burden is on the defendant to "show that the informant's testimony would significantly aid in establishing an asserted defense." Tenorio-Angel, 756 F.2d at 1511 (citing Diaz, 655 F.2d at 588). Mere conjecture about the possible relevance of CI-1's testimony is insufficient to compel disclosure. United States v. Kerris, 748 F.2d 610, 614 (11th Cir. 1984); Ayala, 643 F.2d at 247.

In Gutierrez-Mosqueda's motion and in camera hearing before the Court, he argues that the identity of CI-1 must be disclosed because the only reference to Gutierrez-Mosqueda distributing methamphetamine came from CI-1. However, according to the Government, between April 14 and April 16, 2010, for example, law enforcement agents intercepted Gutierrez-Mosqueda on the court-authorized wiretap as he participated with his co-defendants in the delivery of three pounds of methamphetamine. Thus, contrary to Gutierrez-Mosqueda's argument, the

5

Government's methamphetamine charge would stand, even without the information provided by or the testimony of CI-1. In fact, at this juncture, the Government does not intend to call CI-1 as a witness at trial. Because the methamphetamine charge is supported by wiretap evidence that Gutierrez-Mosqueda may challenge at trial, the disclosure of CI-1's identity is not necessary in order for Gutierrez-Mosqueda to defend against this charge. Gutierrez-Mosqueda has not come forward with any additional defense for which the disclosure of CI-1's identity is necessary. Therefore, the second factor does not weigh in favor of disclosure.

### 3. Government's Interest in Non-Disclosure

The last factor to consider is the Government's interest in non-disclosure. "The government's interest may be proven by showing that disclosure might endanger the informant or other investigations." Tenorio-Angel, 756 F.2d at 1509 (internal citation omitted). In an in camera hearing before this Court, the Government clearly established that CI-1 has been very useful to a number of the Government's investigations, including ongoing investigations. The Government also has established that there is a credible threat of danger to CI-1 and CI-1's family both here in the United States and abroad. Disclosing CI-1's identity, even in a controlled or limited manner, could jeopardize ongoing law enforcement efforts and CI-1 and CI-1's family's well being. Thus, this last factor does not weigh in favor of disclosure.

Accordingly, the undersigned **RECOMMENDS** that Defendant Gutierrez-Mosqueda's Motions for Production of Name and Location of Confidential Informants

be **DENIED**.

## MOTIONS TO SUPPRESS STATEMENTS

Gutierrez-Mosqueda also preliminarily moved to suppress his post-arrest statements. On August 3, 2012, the undersigned ordered Gutierrez-Mosqueda to either perfect his preliminary Motions to Suppress Statements within fourteen (14) days of the Court's Order or to advise the Court as to whether these motions could be withdrawn. Docket Entry [308]. Rather than perfecting (in other words, filing a supplemental or post-hearing motion) the Motions to Suppress Statements, Gutierrez-Mosqueda filed a motion arguing first that the Government had waived its right to object to his motions to suppress because it had not opposed his preliminary motions, and second that he did not understand what the Court meant by its order to "perfect" the motions. Docket Entry [309].

First, Gutierrez-Mosqueda's contention that the Government had waived its right to object to his Motions to Suppress Statements is incorrect. As Gutierrez-Mosqueda himself notes, Local Criminal Rule 12.1 states that "[a] party's failure to file a response to a motion within fourteen (14) days **after being directed by the court to do so** shall indicate that the responding party has no opposition to the motion." LCrR 12.1.B, NDGa. (emphasis added). Also, as Gutierrez-Mosqueda notes, this Court has not set a briefing schedule for the parties. Thus, to date, this Court has not directed the Government to file a response to Gutierrez-Mosqueda's Motions to Suppress Statements. As such, the Government's initial decision not to file a response to

7

Gutierrez-Mosqueda's preliminary Motions to Suppress Statements did not indicate that the Government did not object.[3]

Second, as used by this Court, the term "perfect" means "[t]o take all legal steps needed to complete, secure, or record (a claim, right, or interest)." Black's Law Dictionary (9th ed. 2009). Stated differently, Gutierrez-Mosqueda was required to set forth the relevant facts, as developed during his evidentiary hearing,[4] to show that he is entitled to have his post-arrest statements suppressed. See United States v. Richardson, 764 F.2d 1514, 1527 (11th Cir. 1985) ("A motion to suppress must in every critical respect be sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that a substantial claim is presented. In short, the motion must allege facts which, if proven, would provide a basis for relief."). Gutierrez-Mosqueda's "perfected" motion does not include any facts from the evidentiary hearing, nor does it include any legal analysis of the facts. Likewise, Gutierrez-Mosqueda's preliminary Motions to Suppress Statements do not provide a sufficient factual basis from which this Court can conclude that Gutierrez-Mosqueda is entitled to have his post-arrest statements suppressed. Because Gutierrez-Mosqueda failed to perfect his Motions to Suppress Statements, the undersigned concludes that he has abandoned these motions. Accordingly, the undersigned **RECOMMENDS** that Defendant Gutierrez-Mosqueda's

---

[3] Since the filing of Gutierrez-Mosqueda's perfected Motion to Suppress Statements, the Government has filed a response in opposition to Gutierrez-Mosqueda's motion to suppress. Docket Entry [317].

[4] An evidentiary hearing was held on January 9, 2012. Docket Entry [295].

8

preliminary Motions to Suppress Statements be **DEEMED ABANDONED** and be **DENIED**. United States v. Elder, No. 1:10-CR-132-RWS/AJB, 2010 WL 5656687, at *3 (N.D. Ga. Dec. 16, 2010) ("By failing to perfect the motion, the undersigned concludes that [defendant] abandoned his motion to suppress); United States v. Rodriguez-Alejandro, 664 F. Supp. 2d 1320, 1327 n. 3 (N.D. Ga. 2009) ("Defendant has not perfected the motion [to suppress], and it is deemed abandoned and withdrawn."); United States v. Shorr, No. 1:07-cr-182-1-TWT, 2008 WL 655994, at *1 (N.D. Ga. Mar. 10, 2008) (deeming preliminary motion to suppress abandoned because defendant failed to perfect the motion).

## CONCLUSION

Based on the foregoing reasons, the undersigned **RECOMMENDS** that Defendant Gutierrez-Mosqueda's Motions to Suppress Statements be **DENIED**, (Docket Entries [178, 234, 309]), and Defendant Gutierrez-Mosqueda's Motions for Production of Name and Location of Confidential Informants be **DENIED**, (Docket Entries [236, 265]). As there are no further motions pending, the undersigned certifies this case ready for trial. The clerk is directed to terminate the reference to the undersigned.

**IT IS SO ORDERED AND REPORTED AND RECOMMENDED**, this 13th day of December, 2012.

s/Linda T. Walker<br>
LINDA T. WALKER<br>
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)